**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

*Electronically Filed*

| | |
|---|---|
| DEBRA CHESNUT and | ) |
| GLENN CHESNUT_____ | ) |
|            Plaintiffs | ) |
| vs. | ) |
| | ) |
| MEMORIAL HOSPITAL, INC. | ) |
| SERVE:      REGISTERED AGENT | ) |
|            Erika Skula | ) |
|            210 Marie Langdon Drive | ) |
|            Manchester, KY 40962 | ) |
| | ) |
| and | ) |
| | ) |
| MEMORIAL HOSPITAL, INC. d/b/a | ) |
| GLENNDALE MEDICAL CARE | ) |
| SERVE:      REGISTERED AGENT | ) |
|            Erika Skula | ) |
|            210 Marie Langdon Drive | ) |
|            Manchester, KY 40962 | ) |
| | ) |
| and | ) |
| | ) Civil Action No. _____ |
| JAMES THOMAS, M.D., individually | ) |
| and as an employee, servant, agent, | ) |
| and/or apparent agent and/or | ) JURY TRIAL DEMANDED |
| ostensible agent of MEMORIAL | ) |
| HOSPITAL, INC. | ) |
| SERVE:      JAMES THOMAS | ) |
|            786 University Circle | ) |
|            Madisonville, KY 42431 | ) |
| | ) |
| SERVE:      REGISTERED AGENT of | ) |
|            Memorial Hospital, Inc. as | ) |
|            employer of James Thomas, | ) |
|            M.D. | ) |
|            Erika Skula | ) |
|            210 Marie Langdon Drive | ) |

Page 1 of 31

| | |
|---|---|
| Manchester, KY 40962 | ) |
| and | ) |
| | ) |
| TERESA COLE, A.P.R.N., individually | ) |
| and as an employee, servant, agent, | ) |
| and/or apparent agent and/or ostensible | ) |
| agent of GLENNDALE MEDICAL | ) |
| CARE and/or as an employee, servant, | ) |
| agent, and/or apparent agent and/or | ) |
| ostensible agent of MEMORIAL | ) |
| HOSPITAL, INC. | ) |
| SERVE:        Teresa Cole | ) |
|                    65 Glenndale Drive, Suite 1 | ) |
|                    Manchester, KY, 40962 | ) |
| | ) |
| SERVE:        REGISTERED AGENT of | ) |
|                    Memorial Hospital, Inc. and | ) |
|                    Memorial Hospital, Inc. d/b/a) |
|                    Glenndale Medical Care as | ) |
|                    employer of Teresa Cole, | ) |
|                    A.P.R.N. | ) |
|                    Erika Skula | ) |
|                    210 Marie Langdon Drive | ) |
|                    Manchester, KY 40962 | ) |
|                    Defendants | ) |

## COMPLAINT
**\*\*\* \*\*\* \*\*\* \*\*\* \*\*\***

Come the Plaintiffs, Debra Chesnut and Glenn Chesnut, husband and wife, by and

through counsel, and for their Complaint herein allege and state as follows.

### INTRODUCTION

1.        This is a cause of action for violation of the Emergency Medical Treatment and

Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd and for state claims in tort for medical

malpractice, predicated upon the reckless, malicious, negligent, and/or grossly negligent acts

and/or omissions of the Defendants, individually, and/or jointly and severally.

## PARTIES

2.      Debra Chesnut was at all relevant times hereinafter set forth a citizen and resident of the United States and the Commonwealth of Kentucky in Clay County, in the Eastern District of Kentucky.

3.      Glenn Chesnut was at all relevant times hereinafter set forth a citizen and resident of the United States and the Commonwealth of Kentucky in Clay County, in the Eastern District of Kentucky.

4.      The Plaintiffs, Debra Chesnut and Glenn Chesnut, were married at all times relevant herein.

5.      The Defendant, Memorial Hospital, Inc., hereinafter referred to as Memorial Hospital, was at all times relevant herein a corporation organized and existing under the laws of the Commonwealth of Kentucky and doing business in the Commonwealth of Kentucky. The purpose of the corporation is to provide medical treatment, emergency and otherwise, along with related services to the general public. The corporation's agent for service of process is Erika Skula, 210 Marie Langdon Drive, Manchester, KY 40962.

6.      The Defendant, Memorial Hospital, doing business as Glenndale Medical Care, hereinafter referred to as Glenndale Medical Care, was at all times relevant herein a corporation organized and existing under the laws of the Commonwealth of Kentucky and doing business in the Commonwealth of Kentucky. The purpose of the corporation is to provide medical treatment and related services to the general public. The corporation's agent for service of process is Erika Skula, 210 Marie Langdon Drive, Manchester, KY 40962.

7.     The Defendant, James Thomas, M.D., at all times relevant herein, was a physician duly licensed to practice medicine in the Commonwealth of Kentucky and was at all times relevant herein acting individually and/or was employed by Memorial Hospital, Inc. and/or was a contract physician with Memorial Hospital, Inc., working as an employee of an unknown entity and was on duty and working in the course and scope of his employment and/or contract as a servant, employee, agent, and/or apparent, and/or ostensible agent of the Defendant, Memorial Hospital, Inc. This Defendant will hereinafter be referred to as Defendant Thomas.

8.     The Defendant, Teresa Cole, A.P.R.N., hereinafter referred to as Defendant Cole, at all times relevant herein, was an advanced practice registered nurse licensed to practice in the Commonwealth of Kentucky and was all times relevant herein acting individually and/or was employed by Memorial Hospital and was on duty and working in the course and scope of her employment as a servant, employee, agent, and/or apparent and/or ostensible agent of the Defendant, Memorial Hospital.

## JURISDICTION AND VENUE

9.     Jurisdiction for the Emergency Medical Treatment and Active Labor Act ("EMTALA") is proper under 28 U.S.C. § 1331, which gives federal courts jurisdiction over questions concerning, in part, civil actions arising under the laws of the United States. Jurisdiction for the state law claims is proper under 28 U.S.C. § 1367, which gives federal courts supplemental jurisdiction over state claims that form part of the same case or controversy as the action under which the federal court has original jurisdiction.

10.     Venue is proper for the claims set forth herein pursuant to 28 U.S.C. § 1391(b) in that the Eastern District of Kentucky is where a substantial part of the events or omissions giving

rise to the claims occurred.

11.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

## GENERAL ALLEGATIONS

12.     On or about April 4, 2016, Debra Chesnut presented to the emergency room of the Defendant, Memorial Hospital, for treatment of numbness from the waist down, pain in both legs, and lower back pain. Debra was seen and evaluated by Defendant Thomas. Defendant Thomas ordered a CT scan of Debra's lumbar region that revealed no abnormalities. Defendant Thomas performed a limited vascular examination. Defendant Thomas assessed Debra as "histrionic" and as exhibiting "attention seeking behavior." Defendant Thomas ordered Toradol and diazepam to be administered intravenously. The medical record states that Defendant Thomas stated, regarding Debra Chesnut, "improving, [p]atient is just as histrionic and seems to be making a fuss about her pain, considering she stated she had no sensation in the right lower extremity below the knee. It is hard to explain how she complains of sudden severe pain (she was unable to point to the exact area of the pain she stated was in her right buttock)." Debra Chesnut was then discharged by Defendant Thomas and advised to follow up with another medical provider. At the time of discharge from the Defendant's emergency room, Debra's pain had not decreased, nor was the pain stabilized. The Plaintiff was discharged in excruciating pain.

13.     Debra presented to Glenndale Medical Care to be treated by Defendant Cole on or about April 5, 2016, because her pain had not decreased and was still at an excruciating level. Debra complained of pain in her lower back and legs and described the pain as achy, burning, deep, sharp, shooting, and throbbing. Debra also complained of numbness and tingling. The

medical record states that Debra reported "resolution of right leg pain and numbness but pain and numbness continues in left lower extremity from knee to foot." The medical record also states the following: "Pain in the right side of back with some radiation into right hip. Patient reports that right lower leg is "heavy" and difficult to lift when ambulating." The medical record states that Debra's right leg was cool to the touch while her left leg was warm to the touch. The medical record reflects that a limited vascular examination was performed. Defendant Cole diagnosed Debra as having sciatica associated with disorder of lumbosacral spine, right, and lumbar degenerative disc disease; prescribed hydrocodone, prednisone, ibuprofen, cyclobenzaprine, and neurontin; and advised her to follow up in one week. Defendant Cole was aware that Defendant Thomas had assessed Debra as being histrionic and as exhibiting attention seeking behavior. At the time Debra presented to Defendant Cole on or about April 5, 2016, Debra was unable to walk without assistance, a fact about which Defendant Cole was aware. Defendant Cole stated in the medical record that a Doppler study was discussed with Debra Chesnut. The medical record also states that the Doppler study was declined due to financial considerations. Debra Chesnut denies that a Doppler study was ever offered by Defendant Cole. Debra Chesnut alleges that Defendant Cole did discuss an MRI but Defendant Cole stated that she would not recommend an MRI at that time, since a CT scan had just been performed. Debra Chesnut alleges that Defendant Cole recommended, due to cost, that Debra Chesnut wait to see if her pain decreased before having an MRI. Debra Chesnut left Glenndale Medical Care in excruciating pain and without the pain being stabilized.

14.     On or about April 12, 2016, Debra Chesnut again presented to Glenndale Medical Care to be seen by Defendant Cole with complaints of pain in her lower back and legs. Debra

described pain as achy, burning, deep, discomforting, sharp, stabbing, and throbbing. Debra also complained of numbness. Debra was still unable walk without assistance due to the pain. Defendant Cole repeated her diagnosis from Debra's visit on or about April 5, 2016, performed a limited vascular exam, and assessed Debra once again as having sciatica associated with disorder of lumbosacral spine, right and lumbar degenerative disc disease. Debra was discharged from Glenndale Medical Care without alleviation of any symptoms and discharged in excruciating pain.

15.     Prior to discharge from Glenndale Medical Care on April 12, 2016, Debra requested that Defendant Cole obtain a referral for her to Jared Madden, D.O., Jared Madden, D.O., worked for Grace Community Health, Inc., a federally funded medical clinic with offices in both Clay and Leslie Counties in Kentucky. Defendant Cole obtained a referral for Debra Chesnut to be seen by Jared Madden, D.O., at Grace clinic for later in the afternoon on April 12, 2016. (A federal tort claim has been filed against both Jared Madden, D.O., and Grace Community Health, Inc. The claim was mailed on December 23, 2016. The six month period for the claim to be reviewed by the United States Attorney's Office has not expired. Therefore, Jared Madden, D.O., and Grace Community Health, Inc. are not named parties in this Complaint.)

16.     On or about April 13, 2016, the Plaintiff, Debra Chesnut, presented to Memorial Hospital's emergency room with complaints of severe pain and that her right leg was turning purple. The Plaintiff, Debra Chesnut and was seen by Edna Eugenia Stewart, N.P., who consulted with Kobkit Putrakul, M.D. Dr. Putrakul ordered tests, including a chest x-ray and a Doppler study. The Doppler study on or about April 13, 2016, revealed a right femoral pulse and a faint right popliteal pulse, according to the medical record. The Doppler study on or about April

13, 2016, did not detect posterial tibial or dorsalis pedis pulses. Dr. Putrakul diagnosed Debra as suffering from nontraumatic compartment syndrome of her right leg and an ischemic right leg. On the orders of Dr. Putrakul, on or about April 13, 2016, Debra was transported to the University of Kentucky Medical Center in Lexington, Kentucky.

17.     On or about April 19, 2016, Debra underwent a right below knee amputation at the University of Kentucky Medical Center due to an ischemic right leg.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1395dd BY MEMORIAL HOSPITAL

18.     The Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

19.     The Defendant, Memorial Hospital, holds itself out, advertises, purports, and otherwise informs the public, and more particularly, in the instance of the Plaintiff, Debra Chesnut, that it had and possessed an emergency department to properly care and treat the Plaintiff, Debra Chesnut.

20.     The Defendant, Memorial Hospital, is a participating hospital under 42 U.S.C. § 1395cc.

21.     The Plaintiff, Debra Chesnut, presented to the Defendant's emergency room on April 4, 2016, with symptoms consistent with an ischemic right leg, including but not limited to severe pain. Debra's condition upon her presentation to the Defendant's emergency room was an emergency medical condition under the definition contained in 42 U.S.C. § 1395dd(e)(1)(A), in that, her condition "manifest[ed] itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result

in . . . " placing the health of the Plaintiff, Debra Chesnut, in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. Given the Plaintiff's symptoms upon presentation at the emergency room on April 4, 2016, Memorial Hospital failed to provide the appropriate medical screening examination. Memorial Hospital failed to adequately assess the arterial and venous vascular systems of the Plaintiff, Debra Chesnut.

22.     On or about April 4, 2016, the Plaintiff, Debra Chesnut, came to Defendant Memorial Hospital's emergency department requesting an examination and/or treatment for symptoms demonstrative of an emergency medical condition, including, but not limited to numbness from the waist down and pain in both legs. Although Memorial Hospital performed tests to determine if Plaintiff's low back was the source of severe pain, the Hospital failed to adequately evaluate the Plaintiff's circulatory system as they would have if the Plaintiff had insurance coverage.

23.     The Plaintiff, Debra Chesnut, lacked health insurance coverage at the time of her initial presentation to Memorial Hospital, on or about April 4, 2016, and Debra Chesnut's lack of health insurance coverage on or about April 4, 2016, was known to Memorial Hospital.

24.     During Debra Chesnut's presentation to Memorial Hospital on or about April 4, 2016, Defendant Thomas cited Debra Chesnut's previous visits to Memorial Hospital's emergency room, stating, that she"[h]as presented in a similar fashion with pain in chest and abdomen earlier." Defendant Thomas described Debra Chesnut on April 4, 2016, as "histrionic" and "attention seeking." However, Debra's last visit prior to April 4, 2016, was on January 4, 2013. Debra's medical records indicate that she presented to Memorial Hospital's emergency

room on January 4, 2013, complaining of pain about her right breast that radiated to her right

back. Defendant Thomas' inadequate evaluation and screening of Debra Chesnut was based upon

her lack of health insurance coverage.

      25.    On or about April 13, 2016, the Plaintiff, Debra Chesnut, presented once again to

Memorial Hospital's emergency room where she was diagnosed as having an ischemic right leg,

an emergency medical condition within the meaning of 42 U.S.C. § 1395dd. Debra was then

transferred to the University of Kentucky Medical Center in Lexington, Kentucky by helicopter.

      26.    On or about April 19, 2016, the Plaintiff, Debra Chesnut, underwent a below

the knee amputation of her right leg.

      27.    The Defendant, Memorial Hospital, at all times relevant hereto, had the capability,

through radiological and other means, to thoroughly evaluate the Plaintiff, Debra Chesnut's

vascular system.

      28.    On or about April 4, 2016, the Defendant, Memorial Hospital, failed to

provide the Plaintiff, Debra Chesnut, with an appropriate medical screening examination as

required by 42 U.S.C. § 1395dd(a). That any screening examination the Plaintiff, Debra Chesnut,

did receive was disparate as compared to a screening examination that would have been

performed on a patient with health insurance coverage and/or in a financial condition different

from the Plaintiff, Debra Chesnut.

      29.    On or about April 4, 2016, the Defendant, Memorial Hospital, had knowledge that

the Plaintiff, Debra Chesnut, suffered from an emergency medical condition, since she presented

with severe pain. The Defendant, Memorial Hospital, failed to stabilize Debra Chesnut's

emergency medical condition upon her presentation for treatment at the Defendant's emergency

room as required by 42 U.S.C. § 1395dd(b) and as defined in 42 U.S.C. § 1395dd(e)(3)(A), in that the Defendant failed to "provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility," when Debra Chesnut was discharged while still in severe pain.

30.     According to 42 U.S.C. § 1395d(c), an individual at a hospital with an emergency medical condition which has not been stabilized within the meaning of that statute may not be transferred without the individual's written request for a transfer or a signed certification by the physician or other qualified medical person stating that the benefits of the transfer to another medical facility outweigh the risks of the transfer. In this case, Plaintiff's discharge home violated the Plaintiff's rights under 42 U.S.C. § 1395dd.

31.     No such written requests and/or certifications for Debra Chesnut's transfer from the Defendant, Memorial Hospital, exist.

32.     According to 42 U.S.C. § 1395dd, a transfer is defined as follows:

> "[T]he movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital, but does not include such a movement of an individual who (A) has been declared dead, or (B) leaves the facility without the permission of any such person."

33.     On or about April 4, 2016, the Defendant, Memorial Hospital, transferred the Plaintiff, Debra Chesnut, when they discharged her home without her permission, from Memorial Hospital.

34.     At the time of Debra Chesnut's discharge from Memorial Hospital on or about April 4, 2016, she was still in distress, suffering from severe, excruciating pain.

35.     Due to Memorial Hospital's failure to comply with 42 U.S.C. § 1395dd, Debra Chesnut's health was placed in serious jeopardy and the Plaintiff, Debra Chesnut, did suffer serious impairment to bodily functions and serious dysfunction of a bodily part, including but not limited to the loss of her right leg below the knee. The failure to comply with 42 U.S.C. § 1395dd by Memorial Hospital was the direct and proximate cause and/or a substantial factor in causing Debra Chesnut's personal harm, when she underwent a right leg below the knee amputation on or about April 19, 2016.

36.     As a direct and proximate result of the Defendant's violation of 42 U.S.C. § 1395dd as demonstrated by the medical records, Plaintiff suffered personal harm with the loss of her right leg below the knee. The Plaintiff, Debra Chesnut, is entitled to recover from Memorial Hospital, the following damages:

> A.     Past and future medical, hospital, and other physical care and ancillary expenses;
>
> B.     Past, present, and future mental pain and suffering;
>
> C.     Past, present, and future emotional pain and suffering;
>
> D.     Past, present, and future physical pain and suffering;
>
> E.     Risk of future injury; and
>
> F.     Such equitable relief as is appropriate.

37.     This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

38.     The Plaintiffs state that the damages alleged herein exceed the sum or value of

$75,000.

## COUNT II
### ALLEGATIONS CONCERNING LOSS OF CONSORTIUM FROM VIOLATIONS OF 42 U.S.C. § 1395dd BY MEMORIAL HOSPITAL

39.     Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

40.     The Plaintiff, Glenn Chesnut, states that before the injuries sustained by the Plaintiff, Debra Chesnut, as a direct and proximate result of the Defendant's violation of 42 U.S.C. § 1395dd, described and set forth herein, the Plaintiff, Debra Chesnut, was able to aid, assist, and perform services for him around their home and house, and gave her husband society and companionship. Before the injuries sustained, the Plaintiffs, Debra Chesnut and Glenn Chesnut enjoyed a conjugal relationship.

41.     As a direct and proximate result of the violation of 42 U.S.C. § 1395dd by the Defendant, Memorial Hospital, the Plaintiff, Glenn Chesnut, individually, has sustained the following damages:

> a.     The loss of consortium of his wife, including, but not limited to her love, affection, care, society, support, companionship, and loss and/or diminishment of their conjugal relationship since the date of the incident, as well as loss of same in the future.

42.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

## COUNT III
### VIOLATION OF 42 U.S.C. § 1395dd BY GLENNDALE MEDICAL CARE, A CLINIC OWNED AND OPERATED BY MEMORIAL HOSPITAL

43.     The Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

44.     The Defendant, Glenndale Medical Care, a clinic owned and operated by Memorial Hospital, holds itself out, advertises, purports, and otherwise informs the public, and more particularly, in the instance of the Plaintiff, Debra Chesnut, that it had and possessed the ability to provide emergency care and to properly care and treat the Plaintiff, Debra Chesnut.

45.     The Defendant, Glenndale Medical Care, is a clinic owned and operated by Memorial Hospital, a participating hospital under 42 U.S.C. § 1395cc.

46.     The Plaintiff, Debra Chesnut, presented to the Defendant's clinic, Glenndale Medical Care, on April 5, 2016, with symptoms consistent with an ischemic right leg, including but not limited to severe pain. Debra's condition upon her presentation to the Defendant's clinic was an emergency medical condition under the definition contained in 42 U.S.C. § 1395dd(e)(1)(A), in that, her condition "manifest[ed] itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . " placing the health of the Plaintiff, Debra Chesnut, in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. Given the Plaintiff's symptoms upon presentation at the clinic on April 5, 2016, Glenndale Medical Care failed to provide the appropriate medical screening examination. Glenndale Medical Care failed to adequately assess the arterial and venous vascular systems of the Plaintiff, Debra Chesnut.

47.     On or about April 5, 2016, the Plaintiff, Debra Chesnut, came to Defendant Glenndale Medical Care requesting an examination and/or treatment for symptoms

demonstrative of an emergency medical condition, including, but not limited to numbness from the waist down and pain in both legs. Glenndale Medical Care failed to perform an appropriate medical screening, given the Plaintiff's presenting symptoms and history. Defendant Cole, who worked at Glenndale Medical Care, knew or should have known that Debra Chesnut had become unable to ambulate due to pain and was only mobile by use of a wheelchair or a walker when she presented to Glenndale Medical Care on or about April 5, 2016.

48.    The Plaintiff, Debra Chesnut, lacked health insurance coverage at the time of her initial presentation to Glenndale Medical Care, on or about April 5, 2016, and the lack of the Debra Chesnut's health insurance coverage on or about April 5, 2016, was known to Defendant Cole and Defendant Glenndale Medical Care. Also, Defendant Cole had access to the Defendant, Memorial Hospital's, emergency room records from April 4, 2016, and was aware that Defendant Thomas assessed Debra Chesnut as "histrionic" and "attention seeking."

49.    On or about April 5, 2016, when the Plaintiff, Debra Chesnut, presented to Glenndale Medical Care, a clinic owned and operated by the Defendant, Memorial Hospital, Debra complained of back pain in her lower back and legs. Debra described the pain as achy, burning, deep, sharp, shooting, throbbing, and tingling. Debra also complained of numbness. The medical record states that Debra Chesnut stated that the pain had resolved in the right leg but that the numbness and pain were still present in her left lower extremity from the knee to the foot. The medical record states that Debra Chesnut described her right lower leg as heavy and difficult to lift. Defendant Cole stated in the medical record that the right leg was cool to the touch and the left leg was warm to the touch. In spite of Debra's continued complaints of severe pain, she was discharged from Glenndale Medical Care in an unstable condition.

50.     On or about April 5, 2016, the Defendant, Glenndale Medical Care, a clinic owned and operated by Memorial Hospital, failed to provide the Plaintiff, Debra Chesnut, with an appropriate medical screening examination as required by 42 U.S.C. § 1395dd(a). That any screening examination the Plaintiff, Debra Chesnut, did receive was disparate as compared to a screening examination that would have been performed on a patient with health insurance coverage and/or in a financial condition different from the Plaintiff, Debra Chesnut.

51.     On or about April 5, 2016, the Defendant, Glenndale Medical Care, had knowledge that the Plaintiff, Debra Chesnut, suffered from an emergency medical condition, since she presented with severe, debilitating pain. The Defendant, Glenndale Medical Care, failed to stabilize Debra Chesnut's emergency medical condition upon her presentation for treatment at the Defendant's facility as required by 42 U.S.C. § 1395dd(b) and as defined in 42 U.S.C. § 1395dd(e)(3)(A), in that the Defendant failed to "provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility," when Debra Chesnut was discharged while still in severe, debilitating pain.

52.     According to 42 U.S.C. § 1395dd(c), an individual with an emergency medical condition which has not been stabilized within the meaning of that statute may not be transferred without the individual's written request for a transfer or a signed certification by the physician or other qualified medical person stating that the benefits of the transfer to another medical facility outweigh the risks of the transfer. In this case, Plaintiff's discharge home violated the Plaintiff's rights under 42 U.S.C. § 1395dd.

53.     No such written requests and/or certifications for Debra Chesnut's transfer from

the Defendant, Glenndale Medical Care, exist.

54.     According to 42 U.S.C. § 1395dd, a transfer is defined as follows:

"[T]he movement (including the discharge) of an individual outside a

hospital's facilities at the direction of any person employed by (or

affiliated or associated, directly or indirectly, with) the hospital, but does

not include such a movement of an individual who (A) has been declared

dead, or (B) leaves the facility without the permission of any such person."

55.     On or about April 5, 2016, the Defendant, Glenndale Medical Care, transferred

the Plaintiff, Debra Chesnut, when they discharged her home without her permission, from

Glenndale Medical Care.

56.     At the time of Debra Chesnut's discharge from Glenndale Medical Care on or

about April 5, 2016, she was still in distress with severe, debilitating pain.

57.     On or about April 12, 2016, the Plaintiff, Debra Chesnut, once again presented to

Glenndale Medical Care, with continued complaints of severe lower back and leg pain and

requested a referral to Jared Madden, D.O. In spite of the continual complaints of severe pain,

Defendant Cole again failed to provide the Plaintiff, Debra Chesnut, with an appropriate

screening exam, failed to stabilize Debra Chesnut's emergency medical condition when they

discharged her in severe pain, and failed to transfer Debra Chesnut in accordance with 42 U.S.C.

§ 1395dd when they discharged Debra Chesnut from Glenndale Medical Care's care and referred

her to Jared Madden, D.O. (See Federal Tort Claims Act claim mailed on December 23, 2016

against Jared Madden, D.O. and Grace Community Health, Inc.)

58.     On or about April 13, 2016, the Plaintiff, Debra Chesnut, presented once again to

Memorial Hospital's emergency room where she was diagnosed as having an ischemic right leg, an emergency medical condition within the meaning of 42 U.S.C. § 1395dd. Debra was then transferred to the University of Kentucky Medical Center in Lexington, Kentucky by helicopter.

59.     On or about April 19, 2016, the Plaintiff, Debra Chesnut, underwent a below the knee amputation of her right leg.

60.     The Defendant, Memorial Hospital, and its clinic, Glenndale Medical Care, at all times relevant hereto, had the capability, through radiological and other means, to thoroughly evaluate the Plaintiff, Debra Chesnut's vascular system.

61.     The failure to comply with 42 U.S.C. § 1395dd by Glenndale Medical Care, a clinic owned and operated by Memorial Hospital, was the direct and proximate cause and/or a substantial factor in causing Debra Chesnut's personal harm, the amputation of her right leg below the knee on April 19, 2016.

62.     As a direct and proximate result of the Defendants' violation of 42 U.S.C. § 1395dd as demonstrated by the medical records, Plaintiff suffered personal harm, the amputation of her right leg below the knee. Therefore, the Plaintiff, Debra Chesnut, is entitled to recover from the Defendant the following damages:

> A.     Past and future medical, hospital, and other physical care and ancillary expenses;
>
> B.     Past, present, and future mental pain and suffering;
>
> C.     Past, present, and future emotional pain and suffering;
>
> D.     Past, present, and future physical pain and suffering;
>
> E.     Risk of future injury; and

F.      Such equitable relief as is appropriate.

63.     This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

64.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

**COUNT IV**
**ALLEGATIONS CONCERNING LOSS OF CONSORTIUM FROM VIOLATIONS OF 42 U.S.C. § 1395dd BY GLENNDALE MEDICAL CARE, A CLINIC OWNED AND OPERATED BY MEMORIAL HOSPITAL**

65.     Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

66.     The Plaintiff, Glenn Chesnut, states that before the injuries sustained by the Plaintiff, Debra Chesnut, as a direct and proximate result of the Defendant's violation of 42 U.S.C. § 1395dd, described and set forth herein, the Plaintiff, Debra Chesnut, was able to aid, assist, and perform services for him around their home and house, and gave her husband society and companionship. Before the injuries sustained, the Plaintiffs, Debra Chesnut and Glenn Chesnut enjoyed a conjugal relationship.

67.     As a direct and proximate result of the violation of 42 U.S.C. § 1395dd by the Defendant, Glenndale Medical Care, a clinic owned and operated by Memorial Hospital, the Plaintiff, Glenn Chesnut, individually, has sustained the following damages:

    a.      The loss of consortium of his wife, including, but not limited to her love, affection, care, society, support, companionship, and loss and/or diminishment of their conjugal relationship since the date of the incident, as well as loss of same in the future.

68.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

## COUNT V
## STATE CLAIM
## ALLEGATIONS CONCERNING DEFENDANT THOMAS'S NEGLIGENCE AND/OR GROSS NEGLIGENCE

69.     The Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

70.     Upon the Plaintiff, Debra Chesnut's, initial presentation with leg pain and numbness, Defendant Thomas negligently failed to order the appropriate testing and/or to ensure that the appropriate testing was performed in regard to the care and treatment of the Plaintiff, Debra Chesnut, including but not limited to an adequate physical examination. Defendant Thomas' negligent and/or grossly negligent care and treatment constitutes a deviation from the accepted standard of care owed to the Plaintiff, Debra Chesnut. The actions and/or inactions of Defendant Thomas were the direct and proximate cause and/or a substantial factor in causing Debra Chesnut's right leg below the knee amputation on or about April 19, 2016.

71.     As a direct and proximate result of the Defendant's reckless, negligent, grossly negligent, malicious, and/or wanton actions, the Plaintiff, Debra Chesnut, was caused to suffer the following damages:

        A.     Past and future medical, hospital, and other physical care and ancillary expenses;

        B.     Past, present, and future mental pain and suffering;

        C.     Past, present, and future emotional pain and suffering;

D.      Past, present, and future physical pain and suffering; and

E.      Risk of future injury.

72.     This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

73.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

**COUNT VI**
**STATE CLAIM**
**ALLEGATIONS CONCERNING DEFENDANT MEMORIAL HOSPITAL'S**
**NEGLIGENCE AND/OR GROSS NEGLIGENCE**

74.     The Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

75.     The Defendant, Memorial Hospital, holds itself out, purports, and otherwise informs the public, and more particularly in the instance of the Plaintiff, Debra Chesnut, that it had and possessed the requisite skill, competence, know-how, facilities, personnel, equipment, and information, to properly care and treat the Plaintiff, Debra Chesnut.

76.     The Plaintiff, Debra Chesnut, entrusted herself to the care of the Defendant, Memorial Hospital, and its servants, employees, agents, and/or apparent and/or ostensible agents, including, but not limited to Defendant Thomas.

77.     It was the duty of the Defendant, Memorial Hospital, and its servants, employees, agents, and/or apparent and/or ostensible agents to render hospital services consistent with the medical requirements of the Plaintiff, Debra Chesnut, and not to cause injury to the Plaintiff,

Debra Chesnut.

78.     At all times mentioned herein, the Defendant, Memorial Hospital, held Defendant

Thomas out to specialize in that field of medicine known as emergency medicine.

79.     All the negligent and/or grossly negligent actions and/or omissions of Defendant

Thomas, described herein, were a deviation from the accepted standard of care, which occurred

while Defendant Thomas was acting in the course and scope of his employment as a servant,

employee, agent, and/or apparent and/or ostensible agent of the Defendant, Memorial Hospital.

80.     After assuming the care and treatment of the Plaintiff, Debra Chesnut, the

Defendant, Memorial Hospital, by and through its duly authorized servants, employees, agents,

and/or apparent and/or ostensible agents did commit the following actions and/or omissions:

    a.    Carelessly, negligently, and/or grossly negligently rendered hospital services to the Plaintiff, Debra Chesnut;

    b.    Carelessly, negligently, and/or grossly negligently failed to render hospital services consistent with the medical needs of the Plaintiff, Debra Chesnut;

    c.    Carelessly, negligently, and/or grossly negligently failed to timely intervene on the behalf of the Plaintiff, Debra Chesnut, to see that proper medical care and attention was given to said Plaintiff;

    d.    Carelessly, negligently, and/or grossly negligently failed to review the work and qualifications of Defendant Thomas;

    e.    Carelessly, negligently, and/or grossly negligently

employed incompetent and/or unskilled personnel on its staff considering the nature of the service the Defendant renders;

f.     Carelessly, negligently, and/or grossly negligently failed to provide adequate, sufficient and experienced assistance in the care and the treatment of the Plaintiff, Debra Chesnut; and

g.     Failed to have appropriate screening guidelines in place and/or failed to have appropriate policies in place in regard to patient screening, and/or failed to ensure that the guidelines and/or policies were being followed.

81.     As a direct and proximate result of the Defendant's foregoing negligent and/or grossly negligent actions and/or omissions, all of which are deviations from the standard of care and substantial factors in the Plaintiff's ultimate injury, the Plaintiff, Debra Chesnut, is entitled to recover from Memorial Hospital and the other Defendants, jointly and severally, the following damages:

A.     Past and future medical, hospital, and other physical care and ancillary expenses;

B.     Past, present, and future mental pain and suffering;

C.     Past, present, and future emotional pain and suffering;

D.     Past, present, and future physical pain and suffering; and

E.     Risk of future injury.

82.     This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

83.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

**COUNT VII**
**STATE CLAIM**
**ALLEGATIONS CONCERNING DEFENDANT COLE'S NEGLIGENCE AND/OR GROSS NEGLIGENCE**

84.     The Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

85.     Upon the Plaintiff, Debra Chesnut's, presentations on April 5, 2016, and April 12, 2016, with leg pain and numbness, Defendant Cole negligently failed to order the appropriate testing and/or to ensure that the appropriate testing was performed in regard to the care and treatment of the Plaintiff, Debra Chesnut, including but not limited to an adequate physical examination. Defendant Cole's negligent and/or grossly negligent care and treatment constitutes a deviation from the accepted standard of care owed to the Plaintiff, Debra Chesnut. The actions and/or inactions of Defendant Cole were the direct and proximate cause and/or a substantial factor resulting in Debra Chesnut's amputation of her right leg below the knee on or about April 19, 2016.

86.     As a direct and proximate result of Defendant Cole's reckless, negligent, grossly negligent, malicious, and/or wanton actions, the Plaintiff, Debra Chesnut, was caused to suffer the following damages:

    A.      Past and future medical, hospital, and other physical care and

            ancillary expenses;

    B.      Past, present, and future mental pain and suffering;

    C.      Past, present, and future emotional pain and suffering;

    D.      Past, present, and future physical pain and suffering; and

    E.      Risk of future injury.

87.    This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

88.    Plaintiffs state that the damages are in an amount which is in excess of the minimum jurisdictional requirements of this Court.

**COUNT VIII**
**STATE CLAIM**
**ALLEGATIONS CONCERNING GLENNDALE MEDICAL CARE'S NEGLIGENCE**
**AND/OR GROSS NEGLIGENCE**

89.    Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

90.    The  Defendant, Glenndale Medical Care, holds itself out, purports, and otherwise informs the public, and more particularly in the instance of the Plaintiff, Debra Chesnut, that its physicians and/or employees possess the requisite skill, competence, know-how, and information to properly care and treat the general public, including the Plaintiff, Debra Chesnut.

91.    The  Plaintiff, Debra Chesnut, entrusted herself on two occasions to the care of the Defendant's physicians and/or servants, employees, agents, and/or apparent and/or ostensible

agents, including, but not limited to Defendant Cole on both April 5, 2016, and April 12, 2016.

92.     It was the duty of the Defendant's physicians and/or servants, employees, agents, and/or apparent and/or ostensible agents to render services consistent with the medical requirements of the Plaintiff, Debra Chesnut, and not to cause injury to Debra Chesnut.

93.     All the negligent actions and/or omissions of Defendant Cole, described herein, being a deviation from the accepted standard of care, occurred while she was acting in the course and scope of her employment as a servant, employee, agent, and/or apparent and/or ostensible agent of the Defendant, Glenndale Medical Care.

94.     After assuming the care and treatment of the Plaintiff, Debra Chesnut, the Defendant, Glenndale Medical Care, by and through its duly authorized servants, employees, agents, and/or apparent and/or ostensible agents, did commit the following actions or omissions:

    a. Carelessly, negligently, and/or grossly negligently rendered medical services to the Plaintiff, Debra Chesnut;

    b. Carelessly, negligently, and/or grossly negligently failed to render medical services consistent with the medical needs of the Plaintiff, Debra Chesnut;

    c. Carelessly, negligently, and/or grossly negligently failed to timely intervene on behalf of the Plaintiff, Debra Chesnut, to see that proper medical care and attention was given to said Plaintiff;

    d. Carelessly, negligently, and/or grossly negligently failed to review the work and qualifications of Defendant Cole;

e.     Carelessly, negligently, and/or grossly negligently

employed incompetent and/or unskilled personnel on its

staff considering the nature of the service the Defendant

renders;

f.     Carelessly, negligently, and/or grossly negligently failed to

provide adequate, sufficient and experienced assistance in

the care and the treatment of the Plaintiff, Debra Chesnut;

and

g.     Failed to have appropriate screening guidelines in place,

and/or failed to have appropriate policies in place in regard

to patient screening, and/or failed to ensure that the

guidelines and/or policies were being followed.

95.     As a direct and proximate result of one or more of the Defendants' foregoing

negligent and/or grossly negligent actions and/or omissions, all of which are deviations from the

standard of care and substantial factors in the Plaintiff's ultimate injury, the Plaintiff, Debra

Chesnut, is entitled to recover from Glenndale Medical Care and the other Defendants, jointly

and severally, the following damages:

A.     Past and future medical, hospital, and other physical care and

ancillary expenses;

B.     Past, present, and future mental pain and suffering;

C.     Past, present, and future emotional pain and suffering;

D.     Past, present, and future physical pain and suffering; and

E.      Risk of future injury.

96.     This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

97.     The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

## COUNT IX
## STATE CLAIM
## ALLEGATIONS CONCERNING LOSS OF CONSORTIUM

98.     Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

99.     The Plaintiff, Glenn Chesnut, states that before the injuries sustained by the Plaintiff, Debra Chesnut, as a direct and proximate result of the Defendants' negligent and/or grossly negligent actions and/or omissions described and set forth herein, the Plaintiff, Debra Chesnut, was able to aid, assist, and perform services for him around their home and house, and gave her husband society and companionship. Before the injuries sustained, the Plaintiffs, Debra Chesnut and Glenn Chesnut enjoyed a conjugal relationship.

100.    As a direct and proximate result of the negligence and/or gross negligence of the Defendants named herein, individually and/or jointly and severally, the Plaintiff, Glenn Chesnut, individually, has sustained the following damages:

a.      The loss of consortium of his wife, including, but not limited to her love, affection, care, society, support, companionship, and loss and/or diminishment of their conjugal relationship since the date of

the incident, as well as loss of same in the future.

101.    This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

102.    The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

## COUNT X
## STATE CLAIM
## PUNITIVE DAMAGES

103.    Plaintiffs adopt, incorporate, and reiterate all allegations as if set out verbatim herein.

104.    Defendant Thomas acted toward the Plaintiff, Debra Chesnut, with oppression and malice when she presented to Memorial Hospital's emergency room on or about April 4, 2016. Defendant Thomas' conduct was intended to subject the Plaintiff, Debra Chesnut, to cruel and unjust hardship. Defendant Thomas' negligent and/or grossly negligent treatment amounted to a flagrant indifference to the rights of the Plaintiff, Debra Chesnut, and a subjective awareness that such conduct would result in human death or bodily harm.

105.    Defendant Cole acted toward the Plaintiff, Debra Chesnut, with oppression and malice when she presented to Glenndale Medical Care on or about April 5, 2016, and April 12, 2016.  Defendant Cole's conduct was intended to subject the Plaintiff, Debra Chesnut, to cruel and unjust hardship. Defendant Cole's negligent and/or grossly negligent treatment amounted to a flagrant indifference to the rights of the Plaintiff, Debra Chesnut, and a subjective awareness that such conduct would result in human death or bodily harm.

106.    Memorial Hospital authorized and/or ratified and/or should have anticipated the oppressive and malicious conduct of Defendant Thomas, and therefore, should be liable for any punitive damages assessed against Defendant Thomas.

107.    Memorial Hospital authorized and/or ratified and/or should have anticipated the oppressive and malicious conduct of Defendant Cole, and therefore, should be liable for any punitive damages assessed against Defendant Cole.

108.    As a direct and proximate result of the aforementioned reckless, careless, malicious, oppressive, and/or grossly negligent, and/or intentionally willful, and/or wanton disregard for the health and safety and/or rights of the Plaintiff, Debra Chesnut, on the part of all of the Defendants named herein, Plaintiffs are entitled to an award of punitive damages.

109.    This Court should exercise jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, since this claim so related to the federal claims asserted herein, it is part of the same case or controversy.

110.    The Plaintiffs state that the damages alleged herein exceed the sum or value of $75,000.

WHEREFORE, the Plaintiffs demand judgement against the Defendants, individually and/or jointly and severally, as follows:

1.    A judgment against the Defendants individually, and/or jointly and severally in an amount which is fair and reasonable.

2.    For an award of punitive damages.

3.    For post-judgment interest at the legal rate.

4.    For their costs herein expended.

5.      For a trial by jury.

6.      For any and all other relief to which they may appear entitled, including,

but not limited to an award of a reasonable attorneys' fee.

Dated this 30th day of March, 2017.

Respectfully submitted,

 /s/ **Annette Morgan-White**
HON. ANNETTE MORGAN-WHITE
HON. YANCEY L. WHITE
MORGAN & WHITE LAW OFFICES
2281 SOUTH HIGHWAY 421
MANCHESTER, KY 40962
(606) 598-8188 TELEPHONE
(606) 598-8196  FAX
morganwhite7@gmail.com
ATTORNEYS FOR PLAINTIFFS